**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|                             ) | |
| Plaintiff,    ) | |
|                             ) | |
| vs.                         )  | Case No. CR-09-94-M |
|                             ) | |
| JACOB CHARLES DAVIS,         ) | |
|                             ) | |
| Defendant.    ) | |

### ORDER

Before the Court is defendant Jacob Charles Davis' Motion to Suppress Evidence, filed July 29, 2009. On August 7, 2009, the government filed its response. On August 31, 2009, the Court conducted a hearing on defendant's motion to suppress. At the hearing, Officer Robert Witten of the Lawton Police Department testified.[1] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.   Factual Background[2]

On February 12, 2009, the Lawton Police Department received a call of suspicious activity at a Motel 6 in Lawton, Oklahoma. Officer Breaden, as well as Officers Witten and Sickles, responded to the Motel 6 call and made contact with Angela Edens[3], a housekeeping employee, who informed the officers that she had noticed a lot of short term traffic in relation to room 145, specifically that she had noticed several vehicles and people coming to room 145, staying for a few minutes, and subsequently leaving. Ms. Edens further informed the officers that when the renter of

---

[1]The Court finds Officer Witten to be a very credible witness.

[2]This factual background is based upon the evidence presented at the hearing.

[3]Ms. Edens had provided information to the Lawton Police Department in the past, and her information had always been very reliable.

room 145 had checked in, he asked for a room in the back of the motel.  Finally, Ms. Edens advised

the officers that she had made contact with the renter, told him that she knew what he was doing,

and to stop.

After speaking with Ms. Edens and with management, the officers went to room 145, and

Officer Breaden knocked on the door.[4]  A man, later determined to be defendant, asked "Who is it?".

Officer Breaden responded "Police," and defendant then opened the door.[5]  The officers asked

defendant if he was the renter of the room, and he said yes.  The officers then advised defendant that

there had been complaints of a lot of traffic going in and out of room 145.  Defendant nodded his

head.  The officers next asked defendant if there was anyone else in the room, and defendant stated

that his girlfriend was in the room.  The officers asked defendant if they could speak with his

girlfriend, and defendant said yes.  Officer Breaden remained outside to speak with defendant;

defendant stepped outside, and Officers Witten and Sickles went into the room to speak with

defendant's girlfriend.[6]

Officer Witten asked defendant's girlfriend, who was standing by the bed, if there was

anyone else in the room.  She said no, and Officer Witten said "then you wouldn't mind if we

checked," and she consented to his checking.  Officer Witten walked into the bathroom area and did

not observe any other individuals.

---

[4]Prior to knocking on the door, and while standing at the door, the officers could smell marijuana.

[5]The smell of marijuana became stronger when defendant opened the door.

[6]When Officers Witten and Sickles went into the room, the smell of marijuana became even stronger.

As Officer Witten was walking back towards defendant's girlfriend, he glanced over and saw a handgun sitting on the end table by the bed. He walked over to the table, took possession of the gun, and announced "gun" to the other officers. Officer Sickles took custody of, and handcuffed, defendant's girlfriend. Officer Breaden attempted to take custody of, and handcuff, defendant, but defendant pushed him away and fled. Officers Breaden and Witten pursued defendant but were not able to apprehend him.

When he realized that he would not be able to catch defendant, Officer Witten returned to room 145. As he entered the room, Officer Witten noticed a black sports duffel bag sitting on the dresser. The bag was unzipped, and two Pyrex measuring bowls, a set of digital scales, and a Ziploc bag with marijuana was sticking out. The handgun and these items were seized and logged into the property room at the Lawton Police Department.

II.   Discussion

The government asserts that the Lawton police officers lawfully entered room 145 based on defendant's voluntary consent. "While a police search conducted without a warrant would constitute a violation of the Fourth Amendment in other circumstances, it is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Pena*, 143 F.3d 1363, 1365-66 (10th Cir. 1998) (internal quotations and citations omitted). "The government has the burden of proving valid consent to a warrantless search." *Id.* To establish voluntary consent:

> (1) There must be clear and positive testimony that consent was unequivocable and specific and freely and intelligently given; (2) the Government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such

> rights were waived. Ultimately, the determination of "voluntariness" for consent cases is a question of fact to be determined from the totality of the circumstances.

*United States v. Lopez*, 777 F.2d 543, 548 (10th Cir. 1985) (internal quotations and citations omitted).

Further,

> [i]n determining whether consent was coerced, [the court] consider[s] factors such as: the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.

*United States v. Guerrero*, 472 F.3d 784, 790 (10th Cir. 2007).

Having heard the evidence presented, and based upon the totality of the circumstances, the Court finds defendant voluntarily consented to the officers entering the room to speak to his girlfriend. Specifically, the Court finds that there was no duress or coercion, express or implied, that defendant's consent was freely and intelligently given, and that defendant's consent was unequivocal and specific; when asked if the officers could speak with his girlfriend, defendant said yes and stepped outside of the room so that Officers Witten and Sickles could enter the room. Further, the Court finds the officers did not brandish any weapons, did not physically touch defendant, and did not use aggressive language or tone of voice prior to defendant's consent. The Court, therefore, finds that the officers' entry into the motel room was lawful.

The government further asserts that the Lawton police officers lawfully seized the handgun and marijuana pursuant to the plain view doctrine.

> Under the plain view doctrine, a police officer may properly seize evidence of a crime without a warrant if (1) the officer was lawfully

> in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent – i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

*United States v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996) (internal quotations and citation omitted).

Having heard the evidence presented, the Court finds that the handgun and the marijuana were lawfully seized pursuant to the plain view doctrine. Specifically, the Court finds that, as set forth above, Officer Witten was lawfully in a position from which to view the handgun and marijuana in plain view. The Court further finds that regardless of whether proper consent had been given for Officer Witten to conduct a protective sweep of the bathroom, Officer Witten was lawfully in the motel room and the handgun could be observed in plain view in the main area of the room – the area where the officers were lawfully present – and that Officer's Witten's sweep of the bathroom did not provide any advantage to the discovery of the handgun. Additionally, the Court finds that both the handgun's and the marijuana's incriminating character was immediately apparent and that Officer Witten had a lawful right of access to both the handgun and the marijuana.

III.   Conclusion

Accordingly, for the reasons set forth above, the Court DENIES defendant's Motion to Suppress Evidence [docket no. 20].

**IT IS SO ORDERED this 3rd day of September, 2009.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE